IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSEPH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:16CV8 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Joseph Williams brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claim for social security disability benefits. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits in June of 2012, alleging a disability onset date of December 2, 2011. (Tr. 159-62.)[2] The application was denied initially and upon reconsideration. (*Id.* at 99-115.) Plaintiff had a hearing before an Administrative Law Judge ("ALJ") who determined that he was not disabled. (*Id.* at 32-65.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-7.)

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security and should be substituted for Carolyn W. Colvin as Defendant in this suit. *See* F.R.C.P. 25(d).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 12.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue, then, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and based on a correct application of the law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 2, 2011. (Tr. 34.) The ALJ next found the following severe impairments at step two: bilateral shoulder rotator cuff repair (right 2009 and left 2013), sleep apnea, depression, and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he

2

> can lift 20 pounds occasionally; 10 pounds frequently, sit, stand and walk up to six hours in an eight-hour workday, and occasionally work overhead with either upper extremity. He can perform simple, routine, repetitive work (3 to 4 step operation[s] without a quota requirement); and frequent exposure to public (not service industry).

(*Id.* at 36.) At step four, the ALJ determined that Plaintiff was able to perform his past relevant work (*id.* at 40) and then found that Plaintiff was not disabled under the Act (*id.*).

## IV. ISSUES AND ANALYSIS

### A. The ALJ's Step Four Analysis Is Well-Supported.

Plaintiff asserts that "the ALJ failed to fulfill his duty, under Social Security Ruling (SSR) 82-62, to fully question the claimant and develop the record regarding the physical and mental demands of his past relevant work." (Docket Entry 18 at 6.) Defendant disagrees. (Docket Entry 20 at 8-16.) Having reviewed both briefs and the entire record, the Court agrees with Defendant that this issue lacks merit.

More specifically, Plaintiff has the burden through the first four steps of the sequential evaluation process and at the fourth step he must establish that he has an impairment which prevents him from performing his past relevant work. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The Social Security Regulations address the proper procedure for an ALJ to follow at step four. SSR 82-62 provides in pertinent part that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental

3

>   3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, *A Disability Claimant's Capacity To Do Past Relevant Work*, 1982 WL 31386 (1982). *See also* 20 C.F.R. § 404.1520(e) ("We use our [RFC] assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . .").

Beyond this, 20 C.F.R. § 404.1560(b)(2) provides that:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (*See* § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

Here, the ALJ correctly satisfied all three criteria set forth in SSR 82-62. First, the ALJ made a finding of fact as to Plaintiff's RFC that is supported by substantial evidence. More specifically, Plaintiff's mental status exams were largely benign, demonstrating that he was

4

Case 1:16-cv-00008-WO-JLW    Document 21    Filed 02/23/18    Page 4 of 14

generally alert and oriented; cooperative and pleasant/polite; made good eye contact; had moods ranging from good to depressed with a reactive, and thoughtful affect; had a logical and goal-oriented thought processes; demonstrated no suicidal or homicidal ideation; had normal and spontaneous speech; and demonstrated intact cognition, good insight, and fair to good judgment. (Tr. 36-37, 476-77, 258-59, 308, 381, 391, 417, 511, 527, 533, 707, 774, 808, 861, 891-93, 966, 985.)

Plaintiff also generally reported that he was tolerating his medications without side effects, and that the medications improved his symptoms. (*Id.* at 37, 477, 417, 739, 842-43, 984, 1086.) Plaintiff also reported, or was assessed as, doing well (*id.* at 417, 783, 842, 990), applying for jobs (*id.* at 525, 872), and starting a business (*id.* at 443, 493, 632, 842, 847, 860, 872, 984, 990). He explained that his main stressors varied from having anxiety when shopping in stores that reminded him of Walmart (*id.* at 380, 391) and marital issues (*id.* at 461, 984, 1014) to stress about his wrongful termination lawsuit (*id.* at 307, 380, 416, 527) and anxiety about opening his own landscaping business (*id.* at 475, 958). The ALJ also considered the opinion of consultative examiner, Anthony Smith, Ph.D., and non-examining state agency experts Jennifer Fulmer, Ph.D., and Ken Wilson, Psy.D., and found that Plaintiff's credibly-established mental impairments limited him to simple, routine, and repetitive work, defined as three-to-four step operations without a quota, and to jobs that were not in the service industry and did not require more than frequent interaction with the public. (*Id.* at 36, 39, 71-72, 90-92.)

The ALJ also considered the medical evidence regarding Plaintiff's purported physical

5

impairments, including examination findings and diagnostic images, as well as his diagnoses of bilateral shoulder pain and sleep apnea. (*Id.* at 37-38.) In analyzing Plaintiff's physical impairments, the ALJ gave some weight to the opinion from Dr. Peter Morris, M.D., a consultative examiner. (*Id.* at 38-39, 350-55.) Dr. Morris opined that Plaintiff could stand and walk for six hours in an eight-hour day; could sit without limitation in an eight-hour day; could lift and carry 20 pounds occasionally and 10 pounds frequently; had no limitations with handling, fingering, or feeling; and could only frequently perform postural maneuvers. (*Id.*) However, the ALJ did not accept Dr. Morris's limitations due to lower extremity pain because, as the ALJ explained, these limitations were unsupported by the medical evidence. (*Id.*)

The ALJ also gave little weight to the opinion of Melvin Clayton, M.D., who opined that Plaintiff could perform medium work, because, as the ALJ explained, Plaintiff's "physical impairments limit[ ] him to no more than light work." (Tr. 39, 89-90.) Considering all of this evidence, the ALJ reasonably found that Plaintiff could perform a range of light work due to his physical impairments, and also accounted for Plaintiff's mental health symptoms by limiting him to simple, routine, repetitive work (defined as three-to-four step operations without a quota requirement) and only frequent exposure to the public, but no jobs in the service industry. (*Id.* at 36).

Second, the ALJ made an appropriate finding of fact regarding the demands of Plaintiff's prior work. As alluded to earlier, in making such a finding, an ALJ may consider the claimant's description of past relevant work as it was actually performed, as well as rely upon other resources such as the Dictionary of Occupational Titles ("DOT") and vocational
6

expert ("VE") testimony to determine how that work is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); SSR 82-62, 1982 WL 31386, at *3 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work."). Here, the ALJ relied on testimony from Plaintiff regarding his prior work as a gas station cleaner. (Tr. 50-51.) The ALJ also relied on testimony from a VE who testified that Plaintiff's work as a cleaner was light and unskilled with an SVP 2, and was classified in the DOT under # 323.687-014. (*Id.* at 40, 62.) The ALJ's finding as to the demands of Plaintiff's past relevant work is therefore supported by substantial evidence.

Third, based on VE testimony, Plaintiff's testimony and information in her disability application, the ALJ appropriately found that, "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed." (*Id.* at 40, 47-65, 204-211.) Accordingly, the ALJ's analysis of Plaintiff's past relevant work satisfied each of the criteria set forth in SSR 82-62. *See, e.g., Moore v. Colvin*, No. 1:14CV381, 2015 WL 4879267, at *4 (M.D.N.C. Aug. 14, 2015) (unpublished), *rec' adopted*, 2015 WL 5674896 (M.D.N.C. Sept. 25, 2015) (unpublished).

Plaintiff's arguments to the contrary are not persuasive. To the extent Plaintiff contends that the ALJ failed to develop the record with regard to his ability to perform his past work, and erred by only relying on the DOT definition (Docket Entry 18 at 7-8), this is not so. As discussed above, the ALJ accepted and correctly relied on Plaintiff's testimony as

7

well as testimony from a VE (who also relied on Plaintiff's testimony regarding the requirements of his job as a cleaner) in finding that Plaintiff could perform his past work both as Plaintiff actually performed it and as it was generally performed.[3] (*Id.* at 40, 51-52.)

Moreover, Plaintiff has the burden to show that he is incapable of performing his past relevant work, which he has not met here. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). It is well established that, at step four of the sequential evaluation process, the claimant must demonstrate "an inability to return to [his] previous work (*i.e.* occupation), and not simply to [his] specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983). Here, the VE considered both Plaintiff's testimony as well as the DOT description of the job, and testified that a person with Plaintiff's education, past work experience, and RFC would be able to perform his past job as a cleaner. (Tr. 63.) Specifically, the VE testified that Plaintiff's job as a cleaner would fall within the parameters of Plaintiff's RFC, but that, even if not "in the situation of a gas station . . . . [there are] other jobs, an office cleaner, for example," that a person with Plaintiff's vocational characteristics and RFC would be able to perform. (*Id.*) Accordingly, the ALJ appropriately relied on the VE's testimony in finding, at step four of the sequential evaluation, that Plaintiff could perform his past relevant work as a cleaner as it was actually performed, and also the job of a

---

[3] The VE here testified in response to a hypothetical question that a similarly situated individual to Plaintiff could work as a cleaner, but "that may not be in the situation of a gas station" but rather as an "office cleaner," which is typically done at night and therefore without contact with the general public. (Tr. 63.) Plaintiff contends that "[t]his response is not consistent with the ALJ's finding of an individual capable of return to past relevant work at Step 4[.]" (Docket Entry 18 at 9.) For the reasons set forth above, however, this argument is not persuasive and fails to point to any material error by the ALJ in finding that Plaintiff can work as a cleaner as he previously performed it and as it is generally performed.

8

cleaner as it was generally performed as defined by the DOT.

Plaintiff seems to also contend that his work as a cleaner was not past relevant work because he did not perform it at the substantial gainful activity ("SGA") level. (Docket Entry 18 at 8.) This is not a persuasive argument. "Past relevant work is work that [a claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him or her] to learn to do it."[4] 20 C.F.R. § 404.1560(b)(1). SGA is defined as work activity for pay or profit, even if such work is done on a part-time basis for less pay or with less responsibility than previous work, that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572. Work activity can be substantial, "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). The fact that a claimant's earnings were not substantial, will not necessarily show that he is not able to do SGA. 20 C.F.R. § 404.1574(a)(1).

In this case, the ALJ correctly found that Plaintiff's past work as a cleaner was past relevant work for purposes of the step four analysis. (Tr. 40.) Here, Plaintiff had worked both a full-time job as a Walmart manager and a part-time job as a gas station cleaner. (Tr. 50, 205-06, 178-79.) Plaintiff points to nothing suggesting that he could not have performed his part-time cleaner job on a full-time basis, other than the fact that he already had a full-time job at Walmart. Thus, the ALJ appropriately found that Plaintiff's past job as a cleaner fell within

---

[4] Plaintiff does not contend that he did not perform his cleaning job—an unskilled position with an SVP of 2—long enough to learn it, nor does it appear that any such argument, even if raised, would be meritorious. (Tr. 40.) *See, e.g., Knudsen v. Colvin*, No. 2:14-CV-155-JHR, 2015 WL 1505689, at *9 (D. Me. Apr. 1, 2015) (unpublished) ("The coin box collector job has a specific vocational preparation level of 2, meaning up to and including 1 month. Thus, in the plaintiff's case, the job lasted long enough for her to learn to do it.") (citation omitted).

9

the RFC and that Plaintiff could perform this job as both actually and generally performed in the national economy. (*Id.*)

Moreover, Plaintiff all but concedes that his job as a cleaner was performed at above SGA levels in 2006. (Docket Entry 18 at 8 ("[T]he wages posted during the years that correspond to this job as indicated on the work history report located at Tr. 204-211 correspond to a part-time job with earnings at less than substantial levels *with one possible exception in the year 2006*.") (emphasis added) Thus, Plaintiff's suggestion that he performed his past work as a gas station cleaner at below SGA levels is unpersuasive. (Docket Entry 8 at 8).[5]

Last, to determine whether a claimant's past work qualifies as SGA, the Agency establishes for every year an average monthly earnings amount that, if exceeded, creates a presumption that the work is SGA. 20 C.F.R. § 404.1574(b)(2). If a claimant earns more than set forth in the regulations, a presumption arises that the claimant engaged in SGA. 20 C.F.R. § 404.1574(b)(2). A non-blind individual is presumed to have engaged in substantial gainful activity if his income for the year 2006 exceeded $10,320.00. *See* 20 C.F.R. § 404.1574(b)(2)(ii); *Program Operations Manual System* ("POMS") DI 10501.015 (Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity) *available at*

---

[5] Plaintiff asserts that "[t]he earnings record reflect wages at an employer called Pantry, Inc. despite the claimant referring to this employer as Kangaroo Gas Station." (Docket Entry 18 at 8 referencing Tr. 50, 177-78.) This does not rise to the level of an argument requiring review by this Court, but even if it did, it is clear from the context of the entire record that the two are the same. *See also Barton v. Pantry*, Inc., No. 1:04-CV-748, 2006 WL 1367421, at *1 n.1 (M.D.N.C. May 17, 2006) (unpublished) ("The Pantry operates over 1,300 stores throughout the southeastern United States. About 300 of The Pantry's stores are located in North Carolina. Most of these stores are convenience stores operating under various names . . . [including] Kangaroo Express[.]").

10

https://secure.ssa.gov/poms.nsf/lnx/0410501015. Here, Plaintiff earned $10,322.97 from his job as a gas station cleaner in 2006. (Tr. 178-79). Consequently, Plaintiff's past job as a cleaner was past relevant work for purposes of the step four analysis.[6]

### B. The ALJ's Mental RFC Determination Is Well-Supported.

Plaintiff next contends that the ALJ ran afoul of *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). (Docket Entry 18 at 9-12.) Defendant disagrees. (Docket Entry 20 at 16-21) Having reviewed both briefs and the entire record, the Court agrees with Defendant that this issue lacks merit.

In *Mascio*, the Fourth Circuit remanded the matter, in pertinent part, because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace ("CPP"). *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in CPP by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). The Fourth Circuit emphasized the distinction between the ability

---

[6] *See, e.g., Peters v. Astrue*, No. CIV. 08-2006, 2009 WL 362710, at *2 (W.D. Ark. Feb. 11, 2009) (unpublished) ("The regulations create a rebuttable presumption that a plaintiff is substantially gainfully active if for the year 2006, plaintiff earned an average of $860.00 per month or $10,320.00 for the year."); *Coleman v. Astrue*, No. 4:12CV00008, 2012 WL 4391424, at *2 (W.D. Va. Sept. 24, 2012) (unpublished) ("In . . . 2006, a claimant must have earned . . . $860 per month . . . for their work to have reached the level of substantial gainful activity.") (unpublished), *rec' adopted*, 2012 WL 5398005 (W.D. Va. Nov. 2, 2012) (unpublished).

11

to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, absent such an explanation, remand was necessary. *Id.*

Here, this case is distinct from *Mascio* in a number of important respects. Unlike in *Mascio*, where the ALJ's mental RFC limitation limited the claimant to no more than unskilled work, *Mascio*, 780 F.3d at 637-38, the ALJ in this case included a much more restrictive mental RFC determination limiting the claimant to simple, routine, and repetitive work that was limited to three-to-four step operations without a quota.[7] (Tr. 36.) For this reason alone, Plaintiff's argument lacks merit and should be denied.

And, beyond this, unlike in *Mascio*, where the ALJ failed to explain why additional limitations were not warranted in the mental RFC determination, *Mascio*, 780 F.3d at 638, the ALJ here adequately explained why additional limitations were unwarranted. First, the ALJ in this case considered the mental health evidence, which was made largely of benign mental status examinations without any indication of an inability to stay on task. (*Id.* at 36-37, 308,

---

[7] *See, e.g., Crittenton-Cates v. Berryhill*, No. 1:15CV857, 2017 WL 1534395, at *7-8 (M.D.N.C. Apr. 26, 2017) *rec' adopted* 2017 WL 4220458 (M.D.N.C. Sept. 21, 2017); *Farrington v. Berryhill*, No. 1:15CV846, 2017 WL 807180, at *4-5 (M.D.N.C. Mar. 1, 2017) (unpublished), *rec' adopted* 2017 WL 1155051 (M.D.N.C. Mar. 27, 2017) (unpublished); *Grant v. Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) (unpublished) ("[T]he non-production restriction adopted in this case sufficiently accounts for Plaintiff's moderate limitation in CPP."), *rec' adopted* Slip Op. (M.D.N.C. Sept. 21, 2016) (unpublished).

12

381, 391, 417, 476, 511, 527, 861, 893, 985, 1088.) The ALJ also noted that Plaintiff reported that medications helped without side effects. (*Id.* at 36-37, 461, 509, 739, 807, 860.)

The ALJ also pointed to Plaintiff's own statements and comments regarding his work activities during the relevant period, all of which undermine his purported inability to stay on task. (*Id.* at 38.) For example, in September 2012, Plaintiff reported that he enrolled in a small business course and intended to pursue plans to open his own landscaping company. (*Id.* at 38, 443.) Plaintiff also testified that he could drive, watch television, and use the computer. (*Id.* at 38, 56.) Beyond this, the record contains numerous additional instances of Plaintiff's efforts to seek employment, to perform landscape work, and to work on building a landscape business. (*Id.* at 525, 872, 847, 860, 842, 632, 990.) All this demonstrates that Plaintiff did not have any additional limitations with respect to his ability to stay on task that could not be accounted for by the ability to perform simple, routine, and repetitive work comprising three-to-four step operations with no quota requirements. (*Id.* at 36.)

The ALJ also explained that he considered the October 2012 opinion from consulting psychologist Dr. Anthony Smith, but assigned little weight to the limitations contained therein because Dr. Smith's opinion was a one-time opinion and based upon Plaintiff's physical problems, rather than his psychological issues. (*Id.* at 39.) Dr. Smith stated that, "[claimant] appears to have problems that could interfere with his daily functioning. . . A physical examination would better verify the extent of these physical conditions. If verified these conditions could limit his ability to perform simple, routine, repetitive tasks and maintain concentration, persistence and pace." (*Id.* at 260.)

13

In addition, the ALJ also considered the opinion from non-examining state agency mental health consultant, Dr. Jennifer Fulmer, Ph.D. who opined that Plaintiff had only mild limitations in CPP, and that she would "have some difficulty maintaining attention and concentration in order to complete simple tasks." (*Id.* at 39, 71-72, 76-77.) However, the ALJ gave Dr. Fulmer's opinion limited weight because the ALJ found that Plaintiff had moderate limitations in CPP and required a quota limitation. (*Id.* at 39.) Similarly, the ALJ gave limited weight to the opinion from non-examining state agency mental health consultant, Dr. Ken Wilson, Psy.D. who opined that Plaintiff had moderate limitations in CPP, but did not opine, in particular, with regard to Plaintiff's ability to meet quotas. (*Id.* at 39, 90-92.) Because the ALJ found that Plaintiff should only perform simple, routine, and repetitive work that involved only three to four step operations and did not involve any quotas, the ALJ appropriately gave Dr. Wilson's opinion limited weight. (*Id.* at 39.) For all of these reasons, the ALJ properly discharged his obligations under *Mascio* and this argument has no merit.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's motion for judgment on the pleadings (Docket Entry 17) be **DENIED**, Defendant's motion for judgment on the pleadings (Docket Entry 19) be **GRANTED** and the final decision of the Commissioner be upheld.

February 23, 2018
Durham, North Carolina

Joe L. Webster
United States Magistrate Judge